**Dan M. KELLY, Jr., Appellant,**

v.

**Clarence FORESTER, Appellee.**

Court of Appeals of Kentucky.

March 21, 1958.

G. E. Reams, Cawood Smith, Harlan, for appellant.

James Sampson, William A. Rice, Harlan, for appellee.

MILLIKEN, Judge.

This is an action for $16,200 damages for personal injuries caused by the alleged negligence of the appellee, Forester. The appellant, Kelly, brought suit against Forester, and at the close of Kelly's evidence Forester's motion for a directed verdict was sustained, and, after Kelly's motion for a new trial was overruled, he appealed the judgment.

Dan M. Kelly, Jr., and Clarence Forester were playing golf together at the Harlan Country Club on July 22, 1956. They finished playing the fourth hole and proceeded to the fifth tee. Kelly's drive was down the middle but Forester was not so fortunate. He drove his ball into the rough to the left of the fairway and he and Kelly went to look for it. Kelly found the ball some thirty feet from the left edge of the fairway and farther from the green than was his own. It is the custom in the game of golf that he who is "away" hits first, so it was Forester's turn to take his swing. Forester took stock of the situation, which was as follows:

The green was eighty yards away, but between Forester's ball and the green stood an oak tree about sixty feet high, twenty-

five or thirty feet wide, with branches beginning about fifteen or twenty feet from the ground. This tree was about thirty-five feet from Forester's ball, and was a formidable obstacle for a golfer. Forester had to decide whether to attempt to shoot over the tree, under it, through it, around it, with a hook, or out onto the fairway with a short, "safe" shot. While Forester was preparing to shoot, Kelly walked toward his own ball, which was approximately eighty-five or ninety degrees to Forester's right. He turned around and watched Forester take his swing, being then about forty feet from Forester. Forester, intent on making his shot successful, did not see Kelly and did not motion him away or call out "Fore," the traditional warning signal in golf. Forester decided to attempt a "hook," which is a curve shot. He hoped to so strike the ball that it would go to the right of the tree, past it, and then back to the left and onto the green. But instead he "shanked" the shot. To "shank" is to strike the ball with the shaft of the club instead of its "face." The ball shot to the right and hit Kelly directly in the mouth. Kelly was rushed to the hospital by Forester, where his teeth were reset, his lip sewed up, and his jaw wired. Unfortunately, however, his teeth could not be saved. Because his jawbone was cracked, removal of the loosened teeth was very painful to Kelly, and only one tooth could be extracted at a sitting. For his pain and suffering, for loss of work, and for dental bills, Kelly sued Forester for $16,200.

Plaintiff-appellant, Kelly, was asked by his attorney to define the kind of shot Forester was attempting when Kelly was injured, and Kelly said: "I would call it a trick shot. I don't know what the golf term would be, but I would call it a trick shot." Forester objected and moved to strike the answer. His motion was sustained, and the jury was admonished not to consider the answer as substantive evidence.

■ To sustain his theory that his answer should have been admitted, Kelly insists that Forester "tricked" him and he had a right to say so. It would appear, however, that the jury was fully aware of the cirumstances which gave rise to the injury and of the type of shot Forester attempted, for Forester himself described all this in detail. Kelly's phrase "trick shot" would be calculated to lead the jury to believe that a hook shot was not a proper golf shot, when, in fact, golfers use, or attempt to use, such a maneuver on occasions when their direct line to the green is blocked by an obstacle. Accordingly, it would not appear to be reversible error to exclude such an answer.

Appellent, Kelly, also objects to the exclusion of the answer to a hypothetical question put to the golf professional for the course on which Kelly and Forester were playing. Counsel for Kelly asked this witness whether, under the circumstances, Forester was under any duty to warn Kelly before he hit the ball. Forester's objection was overruled, and the witness replied: "I don't know." He was then asked whether, in his opinion, Forester owed Kelly any duty, and he answered: "If he was real careful, he would probably have motioned him back to have a clear way, if you wanted to be technical about it." Forester's counsel moved to exclude this answer, and his motion was sustained. It was then put in the record by avowal. This witness answered several other questions on avowal, the gist of which was that Forester probably should have motioned Kelly aside before hitting the ball.

In any event, it would appear that the question asked of this witness was precisely the matter in issue. Obviously, if Forester owed Kelly no duty under the circumstances, there was no liability and the motion for a directed verdict should have been sustained. If, however, he did owe some duty to Kelly, it remained for the court to instruct on that duty and for the jury to determine whether it was breached and whether the breach was the proximate cause of the injury. Kelly's theory

apparently is that this witness was an "expert witness," and that his evidence was competent to show that Forester owed Kelly a duty to warn him.

■ Because he claims Forester should have warned him, Kelly's second contention is that the trial court erred in sustaining Forester's motion for a directed verdict. However, it was stated as grounds for Forester's motion for a directed verdict that Forester had not been negligent, that Kelly assumed the risks incidental to the game, that Kelly saw that Forester was about to swing, which obviated any necessity to warn him, and that the shot was a "shank" shot which could have been anticipated by Kelly as a common error of all golfers.

Ordinarily, the duty to warn is extended only to those persons in the direct line of fire, but Kelly insists that the fact that Forester was trying a difficult shot, which was more likely to "misfire" than an ordinary shot, placed a duty on Forester to specifically warn him. He urges, in effect, that Forester was under a duty to warn not only those in his expected (i.e., "hoped for") line of fire, but also anyone to his left or right. He relies on the case of Toohey v. Webster, 97 N.J.L. 545, 117 A. 838, 23 A.LR. 440, in support of his theory.

In that case, a man named Webster fired a shot out of the rough that struck Toohey, a caddie for another player in another group, in the eye. The New Jersey court held Webster liable on the theory that Toohey was almost directly in Webster's line of fire, and should have been warned by Webster under such circumstances.

Kelly seeks to impose the same duty on Forester, even though he was almost at right angles to Forester's intended line of fire, which would extend the rule of the New Jersey case by requiring a golfer to warn everybody on his flanks whenever he attemped a hook or a slice. He would be required to warn, "Everybody get back. I'm going to try a hook, and goodness knows where the ball will go." As one court has pointed out:

"It is well known that not every shot played by a golfer goes to the point where he intends it to go. If such were the case, every player would be perfect and the whole pleasure of the sport would be lost. It is common knowledge, at least among players, that many bad shots must result although every stroke is delivered with the best possible intention and without any negligence whatever." Benjamin v. Nernberg, 102 Pa.Super. 471, 157 A. 10, 11, quoted with approval in Stober v. Embry, 243 Ky. 117, 47 S.W.2d 921.

In that case, Embry was driving from the third tee. Stober, one of the caddies, was standing and watching Embry with other caddies in the rough to the left of the fairway and about fifty yards out from the third tee. Embry's drive "hooked" to the left. One of the caddies ducked, but Stober did not, and the ball struck him in the eye: The Court said [243 Ky. 117, 47 S.W. 2d 922]:

"It is the duty of the driver of a golf ball to exercise ordinary care for the safety of persons reasonably within the range of danger. But ordinary care in such situations does not require the impossible. A player is not able to control either the direction or the destination of a golf ball driven by him. Obviously he must give notice to those unaware of his intended play of the purpose to send the ball in the direction of persons so situated as to be in danger."

For a case from another jurisdiction whose facts are almost identical to the case at bar, see Walsh v. Machlin, 128 Conn. 412, 23 A.2d 156, 157, 138 A.L.R. 538, in which recovery was denied because, among other things, the injured person was watching the shot by which he was hurt, the Court commenting:

"Under the circumstances the defendant was not under a duty to warn

the plaintiff that he was going to strike the ball, for the plaintiff knew it and oral or audible warning would have been superfluous."

The judgment is affirmed.