FREDERICK MEDING, Plaintiff, v. W. WRIGHT ROBINSON, Defendant.

(*December* 3, 1959.)

STOREY, J., sitting.

*Claud L. Tease* for the Plaintiff.

*Stewart Lynch* for the Defendant.

Superior Court for Kent County, No. 165, Civil Action, 1956.

STOREY, J.:

In this case, heard without a jury, plaintiff seeks damages for personal injuries as a result of being struck in the face by a golf ball which had been propelled in his direction by the defendant. At the end of the plaintiff's case, and also at the end of the case, defendant moved for a dismissal, on the ground that plaintiff has not proven his case. Decision reserved on both motions.

The incident occured at the Seaford Golf and Country Club at approximately 6:45 P.M. on August 4, 1955. At that time, plaintiff was watering number 1 green in discharging his duties as a greenskeeper, in which capacity he had been employed by the Country Club over a period of five years. When he saw the two players (who were playing with but ahead of defendant) approaching the green upon which he was working, plaintiff pulled the hose off the green and onto the opposite apron, about seven yards from the pin, where he stayed while waiting for these two players to continue. At this time defendant, about eighty or ninety yards from the pin and approximately the same distance from plaintiff, struck the ball which hit plaintiff on his right cheekbone.

Plaintiff testified that he did not see defendant, nor was he aware of his presence, until after the injury. Defendant testified that he called "Watch it, Fred," in more than a normal tone before making the damaging nine iron shot, but if such a warning was given, it was not heard by plaintiff (who testified that he heard nothing before being hit) or the two players accompanying defendant (who testified that they heard defendant shout a warning at, or after, the time the ball was struck). Mr. Parsons, one of the accompanying players, is definite that

the warning "fore" was given by defendant after the ball was hit. Mr. Larimore, the other member of the threesome, testified that he also heard and gave a warning as the ball was traveling toward Mr. Meding. In any event, the warning here given to a greenskeeper, in full view, standing approximately twenty feet or seven yards from the pin on an eighty or ninety yard drive, appears inadequate. As a general rule, one who is about to strike a golf ball must, in the exercise of ordinary care, give an adequate and timely notice to those who are unaware of his intention to play and who may be endangered by the play. *Stober v. Embry*, 1932, 243 *Ky.* 117, 47 *S. W.* 2d 921; *Petrich v. New Orleans City Park Improv. Ass'n, La. App.* 1939, 188 *So.* 199; *Page v. Unterreiner, Mo. App.* 1939, 130 *S. W.* 2d 970; *Toohey v. Webster*, 1922, 97 *N. J. L.* 545, 117 *A.* 838, 23 *A. L. R.* 440; *Getz v. Freed*, 1954, 377 *Pa.* 480, 105 *A.* 2d 102; *Ratcliffe v. Whitehead*, 3 *West Week Rep.* 447 (*Manitoba* 1933); 1 *Negligence in the Atlantic States* (1954) § 391, Pages 584-585, *Annotation* 138 *A. L. R.* 541, 543. Although no cases have been cited to the court, nor have any been found involving injuries to greenskeepers, there seems to be no good reason why they are not entitled to the same warning as a player or a caddie. Failing in this duty owed to plaintiff, defendant was negligent in his actions insofar as the plaintiff was concerned, and such negligence was the proximate cause of the damage and resulting injuries to plaintiff.

Plaintiff's contributory negligence and assumption of the risk must now be considered. At the time of the accident, plaintiff was rightfully on the golf course and in the exercise of a duty which required him to be where he was at that time. Under the circumstances of the case, I think that Mr. Meding had a right to expect that the defendant would not attempt to drive his golf ball so close to the plaintiff as to put him in danger without giving him some audible warning in time for him to protect himself. *Toohey v. Webster, supra,* 117 *A.* at page 839. I believe that the accident could have been avoided had the defendant

given plaintiff such an admonitory warning before taking his shot, and it was because of his failure to do this that the accident occurred. *Povanda v. Powers*, 1934, 152 *Misc.* 75, 272 *N. Y. S.* 619, 624; see also *Annotation* 138 *A. L. R.* 556, 557. Therefore, I find that plaintiff was not guilty of any negligence which was a contributing cause of the accident.

Having already decided that it was the duty of the defendant to give audible and timely warning of his intended play, it naturally follows that, if defendant failed to give this warning in a proper manner before making his shot, he was guilty of a breach of duty, and it cannot be seriously contended that, under such circumstances, the plaintiff assumed the risk of injury resulting from defendant's failure to perform a duty upon which the plaintiff had a right to rely. *Toohey v. Webster, supra*, 117 *A.* 838, at page 839; *Povanda v. Powers, supra; Biskup v. Hoffman*, 1926, 220 *Mo. App.* 542, 287 *S. W.* 865. Of course voluntary exposure and appreciation of the danger are essential to the defense of assumption of the risk. *Brady v. Kane, Fla.* 1959, 111 *So.* 2d 472, 474; *Prosser on Torts* (2 ed. 1955) pages 309, 311. Mr. Meding may have assumed the risk of injury from the ordinary and usual hazards inherent in the activities around him. *Annotation* 138 *A. L. R.* 541, 554. "But the negligence of the defendant is not, ordinarily considered to be one of the 'ordinary and usual hazards' the risk of which is assumed by the plaintiff, (citations omitted), although once he is fully informed of such negligence, then the risks arising from such negligence may be assumed. *Prosser on Torts*, § 51, page 385. (But see the *Restatement of Torts*, § 466, p. 1230, classifying this type assumption of risk as a form of contributory negligence.)" *Jesters v. Taylor, Fla.* 1958, 105 *So.* 2d 569, 571; 1 *Negligence in the Atlantic States* (1954) § 391, page 585. In view of the above, the doctrine of assumption of the risk does not apply to this case.

For the above reasons, the motions to dismiss are denied and judgment will be given for the plaintiff.

Having found for plaintiff, it now becomes necessary to assess damages.

Plaintiff was injured on Thursday, August 4, 1955, but went back to work on the following Tuesday, August 9, 1955, thereby missing four days from work. However, according to plaintiff's own testimony, he customarily worked only one-half of any Saturday. Computing the time lost at his employed salary of one dollar an hour, I arrive at the figure of $28, representing loss of salary due to the injury. Plaintiff continued working until laid off on November 15, 1955, which would be drawing near the end of the heavy golfing season. The record does not disclose that this resulted from any inability to work as a result of the injury, nor does it show that plaintiff will be unable to obtain other means of employment because of the injury.

The record discloses special damages in the amount of $160.50.

In reaching a figure for pain and suffering, I feel that the period of time over which this amount must be computed to be from the date of injury to the time of plaintiff's refusal or failure to continue medical treatment, which had relieved his pain, i.e., from August 4, 1955 to sometime in the first part of January, 1957, a period of approximately seventeen months. The reason for diminishing such damages after this period is based upon the well known "duty" of a plaintiff to act with reasonable care in order to minimize his damages.

A tort feasor causing personal injury to another is not normally responsible for those consequences of his wrongful act which could have been avoided had the injured person used reasonable care in seeking to cure or alleviate his injuries. *Grabowski v. New Castle Leather Co.,* 1906, 6 *Penn.* 145, 64 *A.* 74, 75; 48 *A. L. R.* 2d 348, at pages 349, 350.

Failure to continue treatment under Dr. Livio Olmedo, which appeared to be a successful treatment until discontinued, was a breach of this "duty", and I feel that plaintiff did not act

reasonably in failing to continue treatment, and, therefore, cannot recover after this date. Even though pain involved in the treatment may be considered in determining whether plaintiff acted as a reasonable man in failing to submit to medical or surgical treatment designed to minimize damages, I feel that there was insufficient pain shown in the testimony of this case to warrant such a consideration. Certainly no danger to life or limb was involved and no substantial risk of serious injury was shown. See *Annotation* 48 *A. L. R.* 2d 348, at pages 366 and 369. I, therefore, find damages from pain and suffering in the amount of $1,500.

Judgment is, therefore, awarded for the plaintiff, Meding, and against the defendant, Robinson, in the amount of $1,688.50.

On presentation, order will be entered accordingly.