[No. 37336.    Department One.    January 28, 1965.]

CHARLES R. SONNENBERG, *Appellant,* v. CHARLES J. REMSING, JR., *et al., Respondents.**

*Reported in 398 P. (2d) 728.

*Robinson, Landerholm, Memovich & Lansverk,* for appellant.

*R. DeWitt Jones,* for respondents.

FOLEY, J.†—Plaintiff brought this action for personal injuries and damages sustained when he was struck by defendants' automobile. The jury returned a verdict for defendants. Plaintiff appeals from an order denying his motion for a new trial on the ground the trial court erred in instructions given to the jury and in failing to give certain instructions proposed by plaintiff.

The accident occurred on December 21, 1961, at about 5:30 p.m. Appellant was a paying passenger in an automobile driven by Patricia Dyvig, which had stopped on East 13th Street in Vancouver to let off another passenger, Mary Weigman, in front of her residence. Appellant got out of the car, unlocked the trunk, and handed a package to Miss Weigman. While he was standing behind the right rear bumper of the Dyvig car, he was struck by a car driven by respondent Charles J. Ramsing, Jr., who will hereafter be referred to as though he were the sole respondent. Appellant testified he was trying to remove the key from the lid of the trunk.

The evidence is conflicting as to the location of the Dyvig car. Appellant and the occupants of the car testified it was half on and half off the pavement on the south side of the street. Respondent testified all the wheels were on the pavement. Thirteenth Street is approximately 19 feet wide, and there is no curb on the south side. It appears that there was a dirt and gravel shoulder about 2 feet wide next to the pavement. "No Parking or Standing" signs were spaced at intervals west of the scene of the accident along 13th Street.

The evidence is also conflicting as to where appellant was standing at the time he was struck. He testified he was standing on the dirt shoulder. Respondent testified appellant was on the south portion of the pavement. Appellant

†Judge Foley is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

was wearing a light raincoat. One of the investigating officers testified it was clear at the time and the pavement was dry. Respondent testified it was damp. Westerly, from the point of the accident, there is an unobstructed view for a distance of three city blocks. About 110 feet west of where the car was stopped, there is a street light at the southwest corner of W Street.

Appellant and his witnesses testified that the taillights were lighted on the Dyvig car. Respondent testified that the right taillight was on after the collision; that the glass had been broken on the left taillight and, although the bulb was intact, it was not lighted.

Respondent turned onto 13th Street at V Street, one block west of W Street, and proceeded east. He indicated that the street light at W Street interferred with seeing beyond it, as it throws a ring of light down. He testified,

"Well I turned onto 13th, was proceeding east, and like I say when I come out underneath that street light the first thing I seen was Mr. Sonnenberg, then I realized he was standing behind the car and it was directly in the right-hand lane of traffic, and I hit the brakes, and it was just too late."

He also estimated that he was "two and a half - three car lengths maybe when I first realized there was someone there." He testified he was traveling between 20 and 25 miles per hour.

Officer Hanson testified that the Remsing vehicle left 19 feet of skid marks which, in his opinion, indicated a minimum speed, at the time the brakes were applied, of 20 miles per hour. The speed limit on 13th Street was 25 miles per hour.

Respondent testified that he made no attempt to sound the horn or to turn to the left. He further testified that he would have been able to avoid hitting appellant if he had turned his car about 2 feet to the left, but that he still would have hit the other car. There was no other traffic on the road.

Appellant testified he did not hear respondent's approach, but that he had heard some "squirreling" at the high school two blocks away.

Appellant assigns as error the failure of the trial court to give the jury his proposed instruction No. 5 based on RCW 46.48.010, reading as follows:

"The laws of the State of Washington provide:

" 'Every person operating or driving a vehicle of any character upon the public highways of this state shall operate the same in a careful and prudent manner and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account the amount and character of the traffic, weight of vehicle, grade and width of highway, condition of surface and freedom of obstruction to view ahead and consistent with any and all conditions existing at the point of operation so as not to unduly or unreasonably endanger the life, limb, property or other rights of any person entitled to the use of such public highways.' "

■ Failure to give this instruction was error, as appellant was entitled to have the jury instructed on the law set forth in the above statute under the evidence and in view of the fact that instruction No. 13 on sudden emergency was given. See *Sewell v. MacRae,* 52 Wn. (2d) 103, 323 P. (2d) 236; *Owens v. Seattle,* 49 Wn. (2d) 187, 299 P. (2d), 560, 61 A.L.R. (2d) 417.

Discussing the sudden emergency doctrine, this court said in *Sandberg v. Spoelstra,* 46 Wn. (2d) 776, 782, 285 P. (2d) 564:

"It is equally well established that the doctrine cannot be invoked by one whose own negligence brought about, in whole or in part, the emergency with which he is confronted. . . ."

In the light of respondent's testimony that the street light obstructed his view ahead, the jury could find that his speed, although within the speed limit of 25 miles per hour, was excessive under the conditions, and, in part, brought about the emergency. This, in turn, might affect the jury's consideration as to whether or not the respondent was entitled to the benefit of the sudden emergency instruction No. 13 because, as the trial court properly instructed the jury, ". . . this rule has not application in favor of a person whose negligence, if any, caused the emergency."

Appellant assigns as error the trial court's refusal to give appellant's proposed instruction No. 2, as follows:

"Negligence, if any, on the part of the driver of the car in which plaintiff had been a passenger is not imputable to the plaintiff and will not bar a recovery for any injuries plaintiff received as a proximate result of negligence, if any, on the part of the defendant."

■ This is a correct statement of the law. *Poutre v. Saunders*, 19 Wn. (2d) 561, 143 P. (2d) 554. The question is whether the appellant was entitled to have it submitted to the jury, in view of all the circumstances in the case. It was appellant's testimony that he was standing on the dirt shoulder of the road. Appellant was asked several times about his knowledge of the car being parked on the paved portion of the highway or partly parked thereon. For example:

"Q. And you knew this vehicle was out into the paved portion of that road, didn't you? A. Not the part that I was behind. Q. Well you knew a part of the vehicle was out there didn't you? A. Half and half, yes. Q. Yes, and you were aware of all of these conditions as you were there, weren't you? A. Yes, I was aware of those conditions."

While these questions may have been proper in connection with respondent's claim of contributory negligence on appellant's part as to whether his knowledge of the condition of the car might affect whether he failed to exercise reasonable care for his own safety, or as a pedestrian failed to yield the right of way, the effect of that line of questioning, together with the court's instruction No. 10, which made the standing or parking of the car negligence, might cause the jury to infer that even though the appellant was standing on the shoulder of the road, the negligence of the driver of the car was imputable to him because he had some connection with the car's position. It was important, therefore, from the appellant's standpoint, to have this requested instruction given. We are of the opinion that the trial court's failure to give appellant's proposed instruction No. 2, under the circumstances, was error.

Appellant assigns as error the failure of the trial court

to give his proposed instruction No. 4, which reads as follows:

"If you find the plaintiff was guilty of negligence which continued up to the time of the accident, but that the defendant actually saw the plaintiff in a position of peril and thereafter had time and opportunity to avoid the accident by the exercise of reasonable care, but failed to do so, then, under the doctrine of last clear chance, notwithstanding the negligence of the plaintiff, your verdict must be for the plaintiff."

■ This instruction proposed by appellant covers the first phase of the last clear chance rule. See *Patterson v. Krogh,* 51 Wn. (2d) 73, 316 P. (2d) 103; *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302; *Mosso v. E. H. Stanton Co.,* 75 Wash. 220, 134 Pac. 941.

As pointed out in *Patterson v. Krogh, supra,* p. 82:

"We have consistently held that the doctrine of *last clear chance* means just that. It will not be applied in either of its phases where the party sought to be charged has merely a last 'possible' chance to avoid injury. See *Sarchett v. Fidler,* 37 Wn. (2d) 363, 223 P. (2d) 843 (1950); *Stokes v. Johnstone,* 47 Wn. (2d) 323, 287 P. (2d) 472 (1955); *Klouse v. Northern Pac. R. Co.,* 50 Wn. (2d) 432, 312 P. (2d) 647 (1957), and cases cited therein."

In *Browning v. Bremerton-Charleston Transit Co.,* 28 Wn. (2d) 713, 721, 183 P. (2d) 1005, the court said:

"We are of the opinion that, before a jury would be warranted in concluding that a defendant was guilty of negligence which was the proximate cause of an accident, under the first phase of the last clear chance doctrine, the evidence and all reasonable inferences to be drawn therefrom must show (1) that defendant actually saw the situation then existing; (2) that he failed to use reasonable care to avoid the accident, at a time when he had sufficient opportunity to avoid it, after he actually appreciated, or, as a reasonable man, should have appreciated, the peril of plaintiff."

With these rules in mind, we must consider whether or not there was sufficient evidence from which the jury would be warranted in finding that the respondent had a last clear chance to avoid the accident under the first phase of the last clear chance rule. Respondent first testified that

he was "two and a half - three car lengths" from appellant when he saw him. However, he later pinpointed the location by reference to coming out from under the street light when he first saw appellant, which would be about 100 feet away. Mrs. Remsing testified to the same effect. Respondent testified he first saw appellant standing in the roadway and then later saw the parked automobile. He also testified that he could have avoided striking appellant by turning his car about 2 feet. It is our opinion that, under the evidence, the jury could have found that the respondent had a last clear chance to avoid the collision with appellant and that his failure to do so was the proximate cause of the injuries sustained by the appellant. *Browning v. Bremerton-Charleston Transit Co., supra; Bockstruck v. Jones,* 60 Wn. (2d) 679, 374 P. (2d) 996.

The issue of last clear chance should have been submitted to the jury. Appellant is awarded a new trial.

ROSELLINI, C. J., OTT, HUNTER, and HALE, JJ., concur.

April 22, 1965. Petition for rehearing denied.