[No. 677-1.    Division One—Panel 1.    May 8, 1972.]

SAM L. WOOD *et al., Appellants,* v. RICHARD
POSTELTHWAITE *et al., Respondents.*

*Jackson, Goldmark, Bender, Anderson, Whelan, Brotman & Lee, Dillon E. Jackson,* and *Roger M. Leed,* for appellants.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* for respondents.

CALLOW, J.—This action was brought by Sam L. Wood against Richard Postelthwaite to recover damages resulting from a golfing accident. The jury found for the defendant and plaintiff appeals.

On September 30, 1967, the plaintiff and defendant were members of a foursome playing at the Snohomish Golf Course. Both were experienced golfers. Wood played an average of once a month, Postelthwaite twice or three times a month and both scored in the eighties or nineties. The first eight holes were played without incident, and Wood was injured on the ninth.

Each of the foursome had hit his drive from the ninth tee. Mr. Martin, a member of the foursome, lost his first shot out of bounds on the right and so drove again hitting to the right near the edge of the fairway. Mr. Rodgers, another member of the foursome, was down the fairway slightly to the right of center. Wood's drive came to rest

about 180 yards from the tee, slightly to the right, between the shots of Martin and Rodgers. Postelthwaite hit toward the left of the fairway; his ball coming to rest about 110 yards from the tee.

Each player proceeded in the general direction of his drive, and Wood and Martin attempted to find Martin's first ball. Postelthwaite had no trouble in locating his shot. He addressed his ball, taking no practice swings, and hit it. He testified that he yelled "fore" immediately prior to striking the ball. The other three players did not hear this warning. At the time of the shot, Wood was approximately 45 degrees to the right of the intended line of flight of Postelthwaite's shot and from 70 to 85 yards away. Postelthwaite testified he had noticed that Wood was looking away from him, hunting for Martin's first shot, approximately 15 seconds before he hit the ball. Postelthwaite's ball, when struck, started toward the green and then sliced sharply to the right. He saw Wood moving toward the line of flight and again yelled "fore." Wood heard this warning and was struck in the eye as he turned toward the sound.[1] The jury

[1]The Rules of Golf as approved by the United States Golf Association were admitted into evidence. When applied to the circumstances of this case, they inject rather than dispel, confusion. They state in relation to the circumstances of this case at 1:

Section I—Etiquette
3. No player should play until the players in front are out of range.
4. In the interest of all, players should play without delay.
. . .
Section III—The Rules of Play
Rule 15—Order of Play in Threesome or Foursome
1. General
In a . . . foursome, the partners should strike off alternately from the teeing grounds, and thereafter shall strike alternately during the play of each hole.
. . .
Rule 20—Ball Farther from the Hole Played First
1. General
When the balls are in play, the ball farther from the hole shall be played first. . . .
Thus in a foursome engaged in its second shot, under rule 15, each should strike alternately while under rule 20, the golfer farthest from

returned a verdict for the defendant.

The claimed errors all pertain to the giving or failure to give instructions. The areas of inquiry into the adequacy of the instructions are:

(a) The duty of the defendant to warn and the right of the plaintiff to rely upon a warning;

(b) The defenses of assumption of risk and volenti non fit injuria; and

(c) The doctrine of last clear chance.

## The Duty to Warn

■■ A golfer has the duty to timely and adequately warn others he intends to hit the ball when:

1. Others are in the zone of danger. *Houston v. Escott,* 85 F. Supp. 59 (D. Del. 1949); *Kelly v. Forester,* 311 S.W.2d 547 (Ky. 1958); *Toohey v. Webster,* 97 N.J.L. 545, 117 A. 838, 23 A.L.R. 440 (1922), and

2. They are unaware the golfer intends to hit the ball and the golfer knows or should know of their unawareness. *Boozer v. Arizona Country Club,* 102 Ariz. 544, 434 P.2d 630 (1967); *Meding v. Robinson,* 52 Del. 299, 157 A.2d 254 (1959); *Take v. Orth,* 395 S.W.2d 270 (Mo. 1965); *Turel v. Milberg,* 10 Misc. 2d 141, 169 N.Y.S.2d 955 (1957); *Povanda v. Powers,* 152 Misc. 75, 272 N.Y.S. 619 (1934); *McWilliams v. Parham,* 273 N.C. 592, 160 S.E.2d 692 (1968).

The court stated in *Take v. Orth, supra* at 274:

A person who is about to strike a golf ball must use ordinary care to warn those within range of the intended flight or the general direction of the drive, and the existence of such duty to warn must be determined by the facts of each case. [Citation omitted.]

There is no duty to warn where the other player is not in or near the intended line of flight or when the other player is aware of the imminence of the intended shot; and, therefore, the warning would be superfluous. *Oakes v. Chapman,*

---

the hole should play first. The expert golfers who testified in the trial did state that it was usual for the golfer farthest from the hole to play and that this procedure which allowed the one farthest behind to catch up was the customary mode of play.

158 Cal. App. 2d 78, 322 P.2d 241 (1958); *Walsh v. Machlin,* 128 Conn. 412, 23 A.2d 156, 138 A.L.R. 538 (1941); *Stober v. Embry,* 47 S.W.2d 921 (Ky. 1932); *Mazzuchelli v. Nissenbaum,* 355 Mass. 788, 244 N.E.2d 729 (1969); *Page v. Unterreiner,* 106 S.W.2d 528 (Mo. 1937).

It is for the jury to decide, with the guidance of the court's instructions whether there was a duty to warn under the circumstances. *Jenks v. McGranaghan,* 32 App. Div. 2d 989, 299 N.Y.S.2d 228 (1969).

The court instructed the jury (No. 5) as follows:

You are instructed that in all of his conduct which might result in harm to other players, a golfer must exercise reasonable and ordinary care under the circumstances, and the other players likewise have the duty of exercising similar care for their own safety. Golf players must reasonably foresee the likelihood of injury to others from their driven golf balls and the other players must likewise reasonably foresee danger. It is the duty of a golf player in the exercise of ordinary care to give to another player timely and adequate warning of his intended drive if the other player is in a zone of danger and is not aware of such intention and if the one driving either knows or in the exercise of ordinary care under existing circumstances should know of such unawareness. The player who is driving must use ordinary care to observe whether another player is within the general direction of his drive, or is otherwise within a zone of danger if the ball should deviate from its intended course, and exercise ordinary care to see that he is adequately warned.

The player who is driving is not an insurer of the safety of another player with reference to the balls he drives nor is he guilty of negligence merely because a ball driven by him deflects from its intended course, but he must have in mind the possibility of deflection and exercise reasonable care with reference to warning another player who is in the zone of danger.

This instruction clearly sets forth the applicable law as reflected in the cases previously cited and in *Berry v. Howe,* 39 Wn.2d 235, 235 P.2d 170 (1951), and *Berry v. Howe,* 34 Wn.2d 403, 208 P.2d 1174 (1949).

## VOLENTI NON FIT INJURIA

Defendant submitted testimony on volenti non fit injuria, and plaintiff acknowledges that an instruction on the defense was appropriate. It is plaintiff's position that the instruction given was general rather than specific in content and therefore inadequate.

■■ The defenses of assumption of risk and volenti non fit injuria were distinguished and clearly discussed in *Walsh v. West Coast Coal Mines, Inc.*, 31 Wn.2d 396, 197 P.2d 233 (1948), by Justice Steinert who stated in part at page 406:

> The defenses . . . are, strictly speaking, three separate and distinct defenses, each of which, by itself, under proper circumstances, may be a good defense where the liability of a defendant is predicated upon his negligence. These defenses, . . . are (1) assumption of risk, (2) the principle involved in the maxim *volenti non fit injuria,* and (3) contributory negligence.
>
> . . .
>
> The doctrine of assumption of risk, . . . is that one who, as servant or employee, enters into the service of another assumes by his very contract of employment the risk of all dangers ordinarily incident to the work upon which he engages. . . .
>
> The ancient maxim *volenti non fit injuria* means "That to which a person assents is not esteemed in law an injury." . . . [T]he principle underlying the maxim is:
>
> "If one knowing and comprehending the danger voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto."
>
> . . .
>
> The distinction between the doctrine of assumption of risk and the principle involved in the maxim *volenti non fit injuria,* as applied by the courts, is that the "doctrine" applies only to cases arising out of the relationship of master and servant, or at least to cases involving a con-

tractual relationship, whereas the "maxim" applies, . . . independently of any contract relation.
. . .

However, the general theory underlying both the doctrine and the maxim referred to above is the same; and this court, as well as courts generally, have used both terms as referring to the same thing in cases where knowledge by an injured party of an obvious danger is involved.

*See also Kingwell v. Hart,* 45 Wn.2d 401, 275 P.2d 431 (1954).

Two decades later in *Detrick v. Garretson Packing Co.,* 73 Wn.2d 804, 440 P.2d 834 (1968), it was emphasized that the evidence required to establish volenti non fit injuria is sufficient when no real consent to relieve a defendant of any duty can be found, but the plaintiff has exposed himself voluntarily to an appreciated and known unreasonable risk.

A chain of Washington cases has restricted the giving of instructions on the defense to those situations where the evidence shows the plaintiff had a superior knowledge and appreciation of the risk involved and was aware of the specific danger with which he was confronted.

*Ewer v. Johnson,* 44 Wn.2d 746, 270 P.2d 813 (1954), pointed out that the general theory underlying assumption of risk and volenti non fit injuria was the same and that once this academic exercise had been completed the descriptive wording was alike. It was further stated that assumption of risk or volenti non fit injuria differ from contributory negligence in that these defenses may be applicable even though the injured party is free from contributory negligence. In that case, which involved a multi-car accident inside a heavy dust cloud, the court instructed the jury as follows at page 759:

"I further instruct you that when a person knowingly and voluntarily places himself in a position of peril, when he understands and appreciates the peril, he assumes the risks and hazards of his act, and in the event he sustains injury or damage, he cannot recover for such

damages. In other words, if he comprehends the nature and the degree of the danger and voluntarily takes his chance, he must abide the consequences, whether he is fortunate or unfortunate in the result of his venture.

"The foregoing principle of law is applicable and controlling even though the party responsible for the condition was negligent, provided the injured person knew of and appreciated the danger and voluntarily made his choice."

This instruction was approved and is the identical instruction given by the trial court in this case.

In *Rickert v. Geppert,* 64 Wn.2d 350, 391 P.2d 964 (1964), it was noted that an instruction on volenti would be appropriate in a proper case where the evidence showing superior knowledge and appreciation was clearly presented. *See also Cockle v. General Elec. Co.,* 70 Wn.2d 846, 425 P.2d 665 (1967); *Feigenbaum v. Brink,* 66 Wn.2d 125, 401 P.2d 642 (1965).

A number of Washington cases state that the court will approve the giving of an instruction on volenti non fit injuria in a proper case, but the issue must be clearly presented.[2] The question arises as to what is a proper case, and under what circumstances should the instruction be given. *Martin v. Kidwiler,* 71 Wn.2d 47, 426 P.2d 489 (1967), stated as follows at page 49:

> The volenti non fit injuria maxim requires that two questions be answered in the affirmative in order that this defense be validly established. Those questions are: "Did plaintiff (1) know of and appreciate the danger or risk involved, and also (2) did he voluntarily consent to expose himself to it . . . ." *Kingwell v. Hart,* 45 Wn.2d 401, 405, 275 P.2d 431 (1954). See also *Handler v. Osman,* 60 Wn.2d 800, 376 P.2d 439 (1962).
>
> We have held that there is no distinction between the general theory underlying the doctrine of assumption of risk and the maxim of volenti non fit injuria. "Both are predicated upon knowledge and appreciation of the danger and voluntary exposure or assent thereto." *Bailey v. Safeway Stores, Inc.,* 55 Wn.2d 728, 731, 349 P.2d 1077

---

[2] WPI 13.01, 6 Wash. Prac. 99.

(1960). In *Tabert v. Zier,* 59 Wn.2d 524, 368 P.2d 685 (1962), this court discussed the defense of assumption of risk and suggested that the knowledge and appreciation by the plaintiff is to be directed toward the particular danger or risk which ends in the plaintiff's injury. . . .

It [the doctrine of assum*t*ion of risk] applies only when the accident arises from a danger known to the victim before the accident, and where the evidence shows that the victim voluntarily chose to enter or to remain in the zone of known danger. . . . [B]efore the doctrine is applicable, the victim must have not only general knowledge of a danger, but must have knowledge of the particular danger, that is, knowledge of the magnitude of the risk involved.

. . . .

In this state the rule is clearly established that before the jury may be properly instructed on the doctrine there must be evidence not only that the plaintiff knew that he was stepping into a place of danger, but also had actual knowledge of the specific danger involved.

. . .

In the present case it is obvious that the plaintiff had knowledge of a general danger, a burning house, however, there is no evidence that she knew of the particular danger that resulted in her injury. The plaintiff did not know that the defendant would throw the burning oil out through the patio door nor was she warned by the defendant. Without this knowledge there could be no appreciation by the plaintiff of the risk she took by remaining on the patio. The record being void of evidence of one of the essential criteria of the maxim of volenti non fit injuria, it was erroneous to give an instruction on this defense.

The plaintiff was an experienced golfer, and we conclude that the proof was sufficient to demonstrate a superior knowledge and appreciation on his part of the danger and risk involved in being on the fringe of the zone of danger ahead of the defendant's drive and that he, by his actions, manifested a willful consent to the peril of the defendant's drive curving in his direction. The question is factual, and,

therefore, an instruction on the maxim was appropriately given. *Clark v. Parrish,* 74 Wn.2d 794, 447 P.2d 177 (1968). Both parties recognized this. The problem is whether or not he assented to the specific danger of a ball being hit without an adequate warning from the defendant.

*Regan v. Seattle,* 76 Wn.2d 501, 458 P.2d 12 (1969), involved an accident on a "go-cart" race course. The defendant interposed the defense of volenti non fit injuria, and the granting of a motion for summary judgment was reversed with the court holding at page 507:

> In order for the "volenti" doctrine to be applicable, plaintiff must have voluntarily exposed himself to a known and appreciated danger. Whether plaintiff had the requisite knowledge of the danger and voluntarily exposed himself to it is normally a question left to the jury. [Citation omitted.]

*Hogenson v. Service Armament Co.,* 77 Wn.2d 209, 461 P.2d 311 (1969), upheld the trial court in not submitting the defense under the maxim stating at page 215:

> However, before it can properly be submitted to the jury there must be at least some evidence introduced indicating that the plaintiff knew of the specific character of the risk, which if known might have caused him to reevaluate his voluntarily entering into the risk-creating situation. In other words, the defense requires more than a generalized feeling that there may be some hazard involved. To illustrate, one who attends a baseball game may be precluded from recovering for damages suffered when hit by a ball or broken bat. *See, e.g., Kavafian v. Seattle Baseball Club Ass'n,* 105 Wash. 215, 177 P. 776, 181 P. 679 (1919). This preclusion may apply even if the circumstances leading to the injury were somewhat bizarre. He would not be precluded from recovering for damages from a collapsing grandstand or from eating tainted concession food unless he knew of this specific risk and voluntarily accepted these risks.
>
> . . .
>
> . . . We held that just because the plaintiff may have been aware of a generalized hazard, does not necessarily mean that he assumed "an extraordinary risk" from spilled water on the race track which he may or

may not have known about. As we stated in that case, "[i]n order for the 'volenti' doctrine to be applicable, plaintiff must have voluntarily exposed himself to a known and appreciated danger." *Regan v. Seattle, supra,* at 507. When there was no evidence introduced that the plaintiff was aware of the factors leading to the "extraordinary risk," a volenti instruction would be singularly inappropriate.

*See also Martin v. Weyerhaeuser Co.,* 1 Wn. App. 463, 462 P.2d 981 (1969).

A recent discussion is found in *Simpson v. May,* 5 Wn. App. 214, 486 P.2d 336 (1971), which again reiterates that the defense is not dead but does require that the plaintiff be aware of the specific danger which he faces before he can be held to have assented to it. It is stated at page 217:

We do not find this ruling inconsistent with subsequent decisions of the Supreme Court which, while recognizing the doctrine of volenti, hold that it does not apply in cases where the injury to plaintiff results from an *extraordinary* risk of which plaintiff could not have knowledge or appreciation. *Regan v. Seattle,* 76 Wn.2d 501, 458 P.2d 12 (1969); *Hogenson v. Service Armament Co.,* 77 Wn.2d 209, 461 P.2d 311 (1969). On the other hand, since *Carabba* [*Carabba v. Anacortes School Dist. 103,* 72 Wn.2d 939, 435 P.2d 936 (1967)] both the Supreme Court and the Court of Appeals have not only recognized the defense of "volenti" but approved its application. *See Detrick v. Garretson Packing Co.,* 73 Wn.2d 804, 440 P.2d 834 (1968); *Martin v. Weyerhaeuser Co.,* 1 Wn. App. 463, 462 P.2d 981 (1969); and *Stark v. Allis-Chalmers & Northwest Roads, Inc.,* 2 Wn. App. 399, 467 P.2d 854 (1970). We conclude the defense of "volenti" has not yet been abolished in this state.

Thus a plaintiff assumes known risks but does not assume the extraordinary risk of an unforeseen act of negligence, *e.g., Regan v. Seattle, supra,* a go-cart driver did not assume the risk of water on the track; *Hogenson v. Service Armament Co., supra,* a plaintiff with a general knowledge of the danger of firing old guns did not assume the risk of using old ammunition; *Martin v. Kidwiler, supra,* a plaintiff with knowledge of a burning house did not assume the risk

of being struck by hot grease thrown from the house; *Vierra v. Fifth Ave. Rental Serv.,* 60 Cal. 2d 266, 383 P.2d 777, 32 Cal. Rptr. 193 (1963), cited in *Martin v. Kidwiler, supra,* assumed the danger of flying concrete but not of a steel splinter flying from the hammer used to chip the concrete.

■ The distinction between those risks inherent in the game and the risk of an inadequate warning was discussed in *Jenks v. McGranaghan, supra.* The court recognized that if a defendant knew that his ball was likely to land in the plaintiff's location and drove without adequate warning it could not be said that the plaintiff could anticipate such a danger and assume such a risk. The court stated at page 989:

> A person playing golf owes a duty to use reasonable care to avoid injuring other players on the course, a player intending to strike a ball being under a duty to give a reasonably adequate warning, such as the traditional shout of "fore", to persons in his line of play or others in such a position that danger to them is reasonably anticipated [citations omitted]. Although participants in and observers of sporting events generally are held to have assumed the risks of injury inherent in the sport, such an assumption of risk does not preclude a recovery for negligent acts which unduly enhance such risks [citations omitted].
>
> While a golfer assumes the risk that a ball may be hit to the right or left, he does not assume the additional risk that another player will hit a ball without proper warning when the latter should have reasonably anticipated that there was a reasonable possibility that the ball might strike the former.

*See also Jesters v. Taylor,* 105 So. 2d 569 (Fla. 1958); *Thomas v. Shaw,* 217 Ga. 688, 124 S.E.2d 396 (1962); *Mc-Williams v. Parham,* 273 N.C. 592, 160 S.E.2d 692 (1968).

The instruction given in *Ewer v. Johnson, supra,* was a correct general statement of the law and appropriate for that case. However, that instruction does not inform the jury that a plaintiff does not assume the risk of being hit until he has been made aware of the risk by an adequate

warning. If the defendant had a duty to warn the plaintiff prior to striking the ball, the plaintiff did not assume a risk that he would not receive an adequate warning. The jury should have been instructed not only in the words of the *Ewer* instruction but also that a player assumes the risks of the game of which he has knowledge but does not assume the risk of negligence of which he has not been forewarned.

## LAST CLEAR CHANCE

The doctrine of last clear chance does not come into play unless both parties were negligent and the negligence of each was a contributing, proximate cause of the accident. *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958), citing *Bergstrom v. Ove,* 39 Wn.2d 78, 234 P.2d 548 (1951). Implicit in the doctrine is the concept that (a) the plaintiff was negligent in placing himself in an emergent situation where he could not avoid injury and (b) the defendant was negligent and had a chance, both last and clear, to avoid injuring the plaintiff. Last clear chance makes a defendant liable notwithstanding the contributory negligence of the plaintiff. Last clear chance cuts off contributory negligence as a defense because one has violated his duty of care not to injure others under circumstances where, notwithstanding contributory negligence, there was a definite opportunity to avoid injuring another.

*Landeis v. Poole,* 69 Wn.2d 515, 418 P.2d 717 (1966), held that last clear chance is not applicable unless the evidence most favorable to the plaintiff discloses a clear opportunity for the defendant to avoid the accident. The court states in part at page 518:

> Where a defendant is confronted by an emergency created by the negligence of the plaintiff, and he does what he can to avoid an injury, he is not liable under the doctrine of last clear chance, even though his course of action is not the wisest choice, and though he is unsuccessful. [Citations omitted.] The doctrine implies thought, appreciation, mental direction and the lapse of sufficient time to act effectually upon the impulse to avoid injury[.] [Citations omitted.]

However, in *Ellington v. Freigang,* 56 Wn.2d 718, 355

P.2d 19 (1960), it was held error to dismiss an action even though there was admitted contributory negligence because the admission did not preclude proof of last clear chance, and in *Sonnenberg v. Remsing*, 65 Wn.2d 553, 398 P.2d 728 (1965), the court held there was sufficient evidence to warrant a jury finding last clear chance; and, therefore, the issue should have been submitted to them. Thus the issue should not be taken away from jury consideration lightly.

In the second *Berry* case, *Berry v. Howe*, 39 Wn.2d 235, 235 P.2d 170 (1951), plaintiff contended that defendant had a last clear chance to avoid the injury, claiming that the defendant knew or should have known that plaintiff was in a position of peril; and the defendant could have avoided the injury by crying "fore." It was stated at page 240:

> We hold that appellant was not in a position of inherent peril. It was not comparable with that of persons upon railroad tracks or highways where certain injury must occur, unless the other person exercises his last clear chance to change his existing course of action to avoid an injury otherwise inevitable.

Other courts have considered the possibility of last clear chance in these circumstances and have decided, without specifically referring to the doctrine by name, that it is only applicable in a golf situation where (a) a ball has been struck creating the imminent peril and (b) there is sufficient time to warn a plaintiff so he could avoid injury by responding to the warning.

In *Strand v. Conner*, 207 Cal. App. 2d 473, 24 Cal. Rptr. 584 (1962), the California court faced a similar problem and quoted *Boynton v. Ryan*, 257 F.2d 70 (3d Cir. 1958), as follows at page 476:

> ". . . Further, we do not see any connection between a duty to shout 'fore' after the shot and the prevention of the plaintiff's injury. Golf balls travel at great speeds and can change directions suddenly. We have no showing that from the time it became apparent, if it ever did, that plaintiff was in danger of being hit, the defendant's warning, if he had a duty to give warning, would have made any difference. In the reported instances where the belated call has been given,

the target has only had time to turn a more vital organ toward the flight of the ball."

*Thomas v. Shaw, supra,* held at page 688:

While it is true, as contended, that golf players assume the risk of dangers ordinarily incident to the game, yet that rule does not apply or extend to a negligent act of a fellow-player; and this is true, since another player on the same course must always exercise ordinary care and diligence not to injure him, and a failure to do so is actionable notwithstanding the assumption-of-risk rule. . . . An exception to the general rule that a golfer assumes the risk of dangers ordinarily incident to the game is unquestionably shown by the petition in this case, which in substance alleges that Shaw, *after* driving his ball, saw, or in the exercise of ordinary care should have seen, that his hooked ball was proceeding toward Thomas who was within its range; that Shaw failed to give Thomas any notice or warning of its approach; and that Thomas would have had time to avoid being injured had Shaw not been negligent in failing to notify or warn him of the approaching ball.

This comment on the doctrine indicates that it may exist when the evidence supports that there was time to warn and time to respond and avoid injury in reaction to such a warning.

■  Whether the doctrine of last clear chance should be submitted to the jury by instructions is a question of law to be decided by the court. The instruction should not be given if the evidence merely establishes it was possible for the defendant to have avoided the accident. Possibility of avoidance is not the test but rather that the chance of avoidance was clear, plain, apparent, self-evident, distinct, manifest, unmistakable. *Schroeder v. Taylor,* 70 Wn.2d 1, 422 P.2d 21 (1966); *Kerlik v. Jerke,* 56 Wn.2d 575, 354 P.2d 702 (1960); *Klouse v. Northern Pac. Ry.,* 50 Wn.2d 432, 312 P.2d 647 (1957).

The circumstances will call for a very high floating drive indeed for the doctrine of last clear chance to be applicable to a golf accident under Washington law. The time segments from creation of an emergency, to the time for a

clear chance to warn, to the time necessary to react to avoid injury is inconsistent with the circumstances arising from a struck golf ball and eliminates the doctrine in such situations for all practical purposes. The evidence in this case does not support an instruction on that aspect.

The defendant was not negligent until and unless he failed to give an adequate warning. Thereafter, he must have been in a situation where there existed an emergency, he saw it or should have seen it and there was clearly time in which to avoid the accident. An emergent situation had not arisen until the ball was struck. Last clear chance presupposes inaction on the part of the defendant when the opportunity is present to avoid injury. We do not see that the defendant was presented clearly with (1) an emergent situation which he perceived or should have seen and (2) time to do something about it.

The doctrine is inapplicable after the ball was struck, but did the possibility of avoiding injury exist for the defendant between the time he shouted his warning of "fore" and struck the ball? Plaintiff advances the claim that he was in a zone of danger and defendant was aware of it and failed to either give an adequate warning or refrain from shooting. Plaintiff claims defendant had a last clear chance to do so, and the jury should have been instructed on the theory.

Last clear chance may exist under two sets of circumstances. The first situation (phase one) contemplates: (a) A negligent plaintiff whose negligence continues up to the time of injury. (b) A defendant who sees the plaintiff's negligence in time to avoid injury but does not act. The second situation (phase two) contemplates: (a) A negligent plaintiff whose negligence has terminated but which culminated with plaintiff in a position of peril from which he cannot escape. (b) A defendant who did not, but should have seen the plaintiff's peril. Restatement (Second) of Torts §§ 479, 480 (1965).

If we presuppose that plaintiff was negligent so that last clear chance might be applicable for the first situation (phase one) to apply, the defendant had to see the plain-

tiff's negligence in time to avoid the injury. The evidence does not support a finding that defendant actually saw plaintiff's peril. Until the ball was struck, defendant could perceive no more than that plaintiff was exposed to the usual risks of the game. For the second situation (phase two) to apply, the negligence of the plaintiff must have terminated prior to the impact with the plaintiff in a position of danger. The only conclusion that can result from the circumstances is that the plaintiff's negligence, if any, continued until the moment of injury.

Either phase of the theory of liability requires a time in which the defendant actually saw or should have recognized danger to the plaintiff in time to avoid the injury. The defendant was never in a position to see a danger to plaintiff that was any greater than the usual risk of the game, nor could he be required to recognize any imminent extraordinary threat to plaintiff at a time when he could avoid injury. No emergent situation existed until the ball was hit. To require him to forebear hitting the ball would have required a course of action different than the custom of the game permitted. If the defendant acted culpably, it was in failing to give an adequate warning, not in hitting the ball when he had no reason to see or detect a peril to plaintiff. *Nichols v. Spokane Sand & Gravel Co.,* 64 Wn.2d 219, 391 P.2d 183 (1964); *Patterson v. Krogh,* 51 Wn.2d 73, 316 P.2d 103 (1957); *Lee v. Cotton Bros. Co.,* 1 Wn. App. 202, 460 P.2d 694 (1969).

It is necessary to reverse and remand the action to the trial court for a new trial in order that the instruction on volenti non fit injuria may be redrafted to apply to the specific situation in conformance with our discussion. We have discussed the other assignments of error to put those issues at rest upon retrial.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied September 6, 1972.

Review granted by Supreme Court October 26, 1972.