[No. 57944-0. En Banc. July 30, 1992.]

JUSTIN SCOTT, ET AL, *Appellants,* v. PACIFIC WEST MOUNTAIN RESORT, ET AL, *Respondents.*

486

*Law Offices of Christopher L. Otorowski,* by *Christopher L. Otorowski,* for appellants.

*Steven R. Meeks,* for respondent Pacific West Mountain Resort.

*Carney, Stephenson, Badley, Smith & Spellman, P.S.,* by *David W. Bever* and *Ruth Nielsen,* for respondents Connor, et al.

*Bryan P. Harnetiaux, Gary N. Bloom,* and *Daniel E. Huntington* on behalf of Washington State Trial Lawyers Association, amicus curiae for appellants.

*Michael H. Runyan* and *Linda E. Blohm* on behalf of Washington Defense Trial Lawyers, amicus curiae for respondents.

*Christopher W. Moore* on behalf of PNSAA, WSSI, PSIA/ Northwest, PNSA-USSA, Seattle Ski Alliance, and PNSEF, amici curiae for respondents.

ANDERSEN, J. —

## FACTS OF CASE

Justin Scott and his parents appeal the dismissals of their tort claims against a ski resort and a ski school for injuries suffered by Justin in a skiing accident. The ski school's motion for summary judgment was granted based upon an exculpatory clause in the ski school application and the ski resort's motion for summary judgment was granted based upon a theory of implied assumption of risk.

■ Since the trial courts dismissed the claims on summary judgment, the facts[1] and all reasonable inferences therefrom are considered in a light most favorable to the plaintiffs as the nonmoving parties.[2]

On March 11, 1989, 12-year-old Justin Scott sustained severe head injuries while skiing at a commercial ski resort

---

[1]Although different facts were submitted during the two separate motions for summary judgment by the ski school and the ski resort, the facts have herein been combined for ease of reading. However, for purposes of legal analysis, only the facts that were before the respective trial courts were considered in the issues relating to the different defendants.

[2]*Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

owned by Pacific West Mountain Resort (hereafter ski resort). Justin was a student of the privately owned Grayson Connor Ski School (hereafter ski school) which offered lessons at the ski resort.

At the time of his injury, Justin was attempting to ski on a slalom race course which had been laid out by the ski school owner, allegedly according to instructions from an agent of the ski resort.

Justin's mother, Barbara Scott, with Justin's father's knowledge and acquiescence, had filled out and signed an application for the ski school which included Justin's name, grade in school (sixth), years skied (2) and other personal information. She checked the boxes indicating Justin was an advanced skier and that he wished to purchase ski-racing lessons. The following language was included in the application:

> For and in consideration of the instruction of skiing, I hereby hold harmless Grayson Connor, and the Grayson Connor Ski School and any instructor or chaperon from all claims arising out of the instruction of skiing or in transit to or from the ski area. I accept full responsibility for the cost of treatment for any injury suffered while taking part in the program.

Witnesses to the accident agreed Justin was practicing on the racecourse and that he missed one of the gates[3] and left the course. One witness reported that as Justin left the course, he appeared to be turning uphill to avoid an unused tow-rope shack but was unable to do so and was ejected out of his skis and down into the depression under the shack. He was found unconscious underneath the shack wrapped around one of the shack's 12- by 12-inch supports, and had sustained severe head injuries.

The Scotts sued both the ski resort and the ski school alleging the racecourse had been improperly prepared and had been negligently placed too close to an unfenced tow-rope shack which was supported by exposed unpadded pillars. The exact distance between the shack and the race-

---

[3] A gate is a lightweight pole or poles inserted into the snow around which a slalom skier must go in descending the race course.

course is disputed but there was evidence the shack was approximately 40 feet from the closest gate. Pacific West noted in its memorandum in support of summary judgment that the distance between the shack and the nearest gate was a matter of dispute, as is the distance between the shack and where Justin left the ski course. These, of course, are factual determinations which cannot be resolved on summary judgment. One expert witness' declaration opined that Justin would have traveled the short distance between the racecourse and the shed in approximately 2 seconds.

There is evidence that the snow adjacent to the racecourse had not been packed and was wet and heavy and more difficult to ski in than the packed snow in the racecourse.

The ski school moved for summary judgment on the basis that the exculpatory clause in the ski school application, signed by Justin's mother, relieved the school from any liability for its own negligence. The trial judge granted that motion and dismissed the claims against the ski school.

The ski resort moved for summary judgment on the ground that Justin had "assumed the risk" and was thus barred from recovery in a negligence action against the ski resort. The trial judge granted that motion and dismissed the claims against the ski resort.

Petitions for direct review were granted by this court.

### ISSUES REGARDING SKI SCHOOL'S DISMISSAL

ISSUE ONE. Was the language of the purported exculpatory clause sufficiently clear to release the ski school for negligent conduct?

ISSUE TWO. May a parent legally waive a child's future potential cause of action for personal injuries resulting from a third party's negligence?

### ISSUES REGARDING SKI RESORT'S DISMISSAL

ISSUE THREE. Subsequent to the adoption of comparative negligence, does the doctrine of primary implied assumption of risk act to bar recovery or only to reduce damages?

ISSUE FOUR. Under the facts of this case, did the trial court properly apply the doctrine of primary implied assumption of risk as a complete bar to plaintiff's recovery?

## DECISION

ISSUE ONE.

CONCLUSION. We conclude that the language of the purported exculpatory clause contained in the ski school application was sufficiently clear to give notice that the ski school was attempting to be released from liability for its negligent conduct.

 Exculpatory clauses are strictly construed and must be clear if the exemption from liability is to be enforced.[4] The sufficiency of the language to effect a release is generally a question of law.[5]

Some cases and commentators have declared that a clause will not be construed to include an exemption for negligence unless it includes the word "negligence" or language with similar import.[6] However, many courts have held that clear and unambiguous exculpatory language can eliminate negligence liability without expressly using the word "negligence".[7] Two Washington Court of Appeals cases have also held that the word "negligence" is not essential to

---

[4]1 S. Speiser, C. Krause & A. Gans, *American Law of Torts* § 5:39, at 1101-03 (1983).

[5]1 S. Speiser, C. Krause & A. Gans, at 1102; *Blide v. Rainier Mountaineering, Inc.*, 30 Wn. App. 571, 574, 636 P.2d 492 (1981), *review denied*, 96 Wn.2d 1027 (1982).

[6]*E.g.*, W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 68, at 484 (5th ed. 1984); *O'Connell v. Walt Disney World Co.*, 413 So. 2d 444, 447 (Fla. Dist. Ct. App. 1982); *Rosen v. LTV Recreational Dev., Inc.*, 569 F.2d 1117, 1122 (10th Cir. 1978).

[7]*See, e.g.*, *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 711 (Wyo. 1987) (the language "hold harmless and release . . . all claims" sufficient to release for negligence); *Weiner v. Mt. Airy Lodge, Inc.*, 719 F. Supp. 342, 345 (M.D. Pa. 1989) ("[T]o say that negligent conduct is not included in 'any liability' is patently incorrect."). 1 S. Speiser, C. Krause & A. Gans, *Torts* § 5:39, at 1089 (1983) (even though preinjury release does not refer to "negligence", where the hazard is within the contemplation of the release, the word is not essential).

the effectiveness of an express release.[8] We agree. Courts should use common sense in interpreting purported releases,[9] and the language "hold harmless . . . from all claims" logically includes negligent conduct. One does not have a "claim" to be "held harmless" from unless there is a basis for liability. The language of the exculpatory clause shows the parties' intent to shift the risk of loss. The second sentence stating that the parents of the skier "accept full responsibility for the cost of treatment for any injury" supports this conclusion.

Plaintiffs also argue that the hold harmless language is more "indemnity" language than "release" language and therefore should not be sufficient to serve as an exculpatory clause. However, indemnity agreements are "closely akin" to releases.[10] The court in *O'Connell v. Walt Disney World Co.*, 413 So. 2d 444, 446 (Fla. Dist. Ct. App. 1982) explained that although there is a distinction in definition between exculpatory clauses and indemnity clauses, in these settings they both attempt to shift ultimate responsibility for negligence and so are generally construed by the same principles of law. An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing the injury. An indemnification clause attempts to shift responsibility for the payment of damages to someone other than the negligent party, usually back to the injured party, thus likely producing the same result as an exculpatory clause.

Thus, in this case the fact that the application uses the words "hold harmless" rather than the word "release" does not significantly impact the issue of whether the effect was to exculpate the ski school from liability for its own negligence.

---

[8]*Hewitt v. Miller*, 11 Wn. App. 72, 79, 521 P.2d 244, *review denied*, 84 Wn.2d 1007 (1974); *Blide*, 30 Wn. App. at 574.

[9]*Weiner*, 719 F. Supp. at 345.

[10]1 S. Speiser, C. Krause & A. Gans § 5:39, at 1103; 57A Am. Jur. 2d *Negligence* § 51, at 108 (1989).

Plaintiffs also argue that the claim was one not "arising out of the instruction of skiing" because it was caused by the ski instructor's placement of the racecourse too close to the shed. However, it is clear from the application form that these were ski racing lessons; a racecourse would therefore be an integral part of teaching ski racing. This argument is factually strained and unconvincing.

We conclude that to the extent the release is otherwise legally valid the language of the exculpatory clause was sufficiently clear to release the ski school from liability for negligent conduct. We therefore must reach the legal issue regarding parents' authority to release not only their own claims but also the potential future claim belonging to a child.

ISSUE TWO.

CONCLUSION. A parent does not have legal authority to waive a child's own future cause of action for personal injuries resulting from a third party's negligence.

■ The general rule in Washington is that exculpatory clauses are enforceable unless (1) they violate public policy, or (2) the negligent act falls greatly below the standard established by law for protection of others or (3) they are inconspicuous.[11] In the present case, there is no allegation that the conduct fell below that of ordinary negligence or that the language was inconspicuous or unwittingly signed. The issue is whether this release violates public policy.

Whether exculpatory clauses signed by parents which bar a child's cause of action for injuries sustained due to negligence violate public policy is a question of first impression in Washington.

Washington cases have upheld exculpatory clauses in favor of private parties in various high risk sports-related situations.[12] However, in none of these cases did a release

---

[11]*Wagenblast v. Odessa Sch. Dist. 105-157-166J*, 110 Wn.2d 845, 856, 758 P.2d 968, 85 A.L.R.4th 331 (1988); *McCutcheon v. United Homes Corp.*, 79 Wn.2d 443, 486 P.2d 1093 (1971); *Blide v. Rainier Mountaineering, Inc., supra*; *Shorter v. Drury*, 103 Wn.2d 645, 695 P.2d 116, *cert. denied*, 474 U.S. 827 (1985); *Baker v. Seattle*, 79 Wn.2d 198, 484 P.2d 405 (1971).

[12]*E.g., Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847, 728 P.2d 617 (1986); *Blide v. Rainier Mountaineering, Inc., supra; Hewitt v. Miller, supra. See also Garretson v. United States*, 456 F.2d 1017 (9th Cir. 1972).

signed by a parent purport to release a potential defendant from liability for negligent injury to a child. Although we adhere to prior Washington law that an adult sports participant can waive liability for another's negligence, we consider this a very different question than whether parents can release another for negligence which injures their child.

The ski school argues that our recent opinion in *Wagenblast v. Odessa Sch. Dist. 105-157-166J*, 110 Wn.2d 845, 758 P.2d 968, 85 A.L.R.4th 331 (1988) impliedly holds that exculpatory releases can be enforced to bar a child's cause of action when a release is signed by a parent. That is incorrect. In *Wagenblast*, we decided that it violated public policy to enforce releases (signed by students and their parents) which released school districts from their negligence during public school athletics. Since the releases were struck down on other grounds, it was unnecessary in *Wagenblast* to answer the question whether parents have the authority to release a third party for future negligent injury to their child. Hence this issue was not decided, impliedly or otherwise, in *Wagenblast*. While upholding some exculpatory clauses, we have also held some kinds of exculpatory clauses to be violative of public policy and therefore unenforceable.[13] There are instances where public policy reasons for preserving an obligation of care owed by one person to another outweigh our traditional regard for freedom of contract.[14] In deciding the particular issue before the courts, it is helpful to look to the analogous situation where parents seek to release their child's cause of action for injuries already sustained. The ski school argues that since Washington law allows a parent to sue on behalf of the child, it also should allow a parent to release a cause of action.

---

[13]*McCutcheon v. United Homes Corp.*, *supra* (releases for negligence void in residential landlord-tenant setting); *Thomas v. Housing Auth.*, 71 Wn.2d 69, 426 P.2d 836 (1967) (voiding provision exculpating a public housing authority from liability for negligence); *Wagenblast v. Odessa Sch. Dist. 105-157-166J*, *supra* (invalidating exculpatory clauses releasing public schools for liability for injuries sustained by students in interscholastic athletics).

[14]*Wagenblast*, 110 Wn.2d at 849.

Contrary to the ski school's argument, it is settled law in many jurisdictions that, absent judicial or statutory authority, parents have no authority to release a cause of action belonging to their child.[15] Courts often hold that in a postinjury setting a parent's signature on a release is ineffective to bar a minor's claims against a negligent party.[16] Washington law is in accord. Under Washington law parents may not settle or release a child's claim without prior court approval.[17] Further, in any settlement of a minor's claim, Washington law provides that a guardian ad litem must be appointed (unless independent counsel represents the child) and a hearing held to approve the settlement.[18]

█ Since a parent generally may not release a child's cause of action after injury, it makes little, if any, sense to conclude a parent has the authority to release a child's cause of action prior to an injury. In situations where parents are unwilling or unable to provide for a seriously injured child, the child would have no recourse against a negligent party to acquire resources needed for care and this is true regardless of when relinquishment of the child's rights might occur.

Numerous cases in other jurisdictions have considered the validity of preinjury releases signed by a parent and concluded that such releases do not bar the *child's* cause of action for personal injuries.[19] We agree with this view.

---

[15]*See* 59 Am. Jur. 2d *Parent and Child* § 40, at 183 (1987); 67A C.J.S. *Parent and Child* § 114, at 469 (1978).

[16]*See, e.g., Castro v. Boulevard Hosp.*, 106 A.D.2d 539, 483 N.Y.S.2d 65 (1984); *Whitcomb v. Dancer*, 140 Vt. 580, 443 A.2d 458 (1982); *Colfer v. Royal Globe Ins. Co.*, 214 N.J. Super. 374, 519 A.2d 893 (1986).

[17]SPR 98.16W; 4A L. Orland & K. Tegland, Wash. Prac., *Rules Practice* § 6081, at 53-57 (4th ed. 1990).

[18]SPR 98.16W.

[19]*Fedor v. Mauwehu Coun., Boy Scouts of Am., Inc.*, 21 Conn. Supp. 38, 143 A.2d 466 (1958) (a release signed by a parent waiving future claims for injury violates public policy, and is ineffective to bar minor's negligence claim); *Childress v. Madison Cy.*, 777 S.W.2d 1 (Tenn. Ct. App. 1989) (mother cannot execute

Amici Washington Defense Trial Lawyers and various ski organizations argue that the invalidation of releases signed by parents to bar children's claims would make sports engaged in by minors prohibitively expensive due to insurance costs. While this is a valid concern, the same argument was made and rejected in *Wagenblast*. Indeed, the same argument can be made in many areas of tort law, *e.g.*, provision of medical or legal services. No legally sound reason is advanced for removing children's athletics from the normal tort system.

We hold that to the extent a parent's release of a third party's liability for negligence purports to bar a child's own cause of action, it violates public policy and is unenforceable. However, an otherwise conspicuous and clear exculpatory clause can serve to bar the parents' cause of action based upon injury to their child. Therefore, we hold that Justin's parents' cause of action is barred by the release; Justin's own cause of action is not barred.

ISSUE THREE.

CONCLUSION. Primary implied assumption of risk continues as a complete bar to recovery after the adoption of comparative negligence laws.

---

a valid release or exculpatory clause as to the rights of her son and such release is void as to the son's rights although valid to waive the mother's claim). *Accord*, *Rogers v. Donelson-Hermitage Chamber of Commerce*, 807 S.W.2d 242 (Tenn. Ct. App. 1990); *Doyle v. Bowdoin College*, 403 A.2d 1206, 1208 n.3 (Me. 1979) (releases signed by parent prior to son being injured playing hockey were void as a parent cannot release a child's cause of action) (citing *Stockman v. South Portland*, 147 Me. 376, 383, 87 A.2d 679 (1952)). *See also International Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 213, 113 L. Ed. 2d 158, 111 S. Ct. 1196, 1211 (1991) (White, J., concurring) (stating the general rule that parents cannot waive causes of action on behalf of their children). *See Fitzgerald v. Newark Morning Ledger Co.*, 111 N.J. Super. 104, 267 A.2d 557 (1970). *See also* R. Kaiser, *Liability and Law in Recreation, Parks, and Sports* 84 (1986) (releases are invalid when minors or their parents sign the release as it is generally accepted a parent can surrender his or her future tort claim, but may not surrender the independent claim of a minor child). *But see Hohe v. San Diego Unified Sch. Dist.*, 224 Cal. App. 3d 1559, 1565, 274 Cal. Rptr. 647 (1990) (parent can contract for a child). However, *Hohe* relies only on a case which allowed a parent to bind a child to the arbitration forum.

The entire doctrine of "assumption of risk" is surrounded by much confusion,[20] and has been improperly applied in many ski accident cases.[21] This is partially because at common law both assumption of risk and contributory negligence operated as total bars to recovery.[22] Therefore, it was formerly not critical that the two concepts be carefully distinguished. With the enactment of the comparative negligence and comparative fault statutes, it became essential to separate the various kinds of assumption of risk to distinguish between the kinds that shift the defendant's duty to the plaintiff (and hence bar the claim) and the types which are essentially contributory negligence (and hence simply reduce damages).

Under the traditional Prosser and Keeton analysis, the assumption of risk doctrine is divided into four classifications: (1) express; (2) implied primary; (3) implied reasonable; and (4) implied unreasonable. *Shorter v. Drury*, 103 Wn.2d 645, 655, 695 P.2d 116, *cert. denied*, 474 U.S. 827 (1985).

Express assumption occurs when parties agree in advance that one of them is under no obligation to use reasonable care for the benefit of the other and will not be liable for what would otherwise be negligence. When such a plaintiff is injured by one of the risks for which he or she has agreed to forgo suit, the claim will be barred because that risk was assumed by the plaintiff.[23] The bar of express assumption is based on contract and survives the enactment of comparative negligence statutes.[24] However, such

---

[20]W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 68, at 480-84 (5th ed. 1984); *see* Annot., *Effect of Adoption of Comparative Negligence Rules on Assumption of Risk*, 16 A.L.R.4th 700 (1982).

[21]Note, *Ski Operators and Skiers — Responsibility and Liability*, 14 New Eng. L.R. 260, 262 (1978-1979).

[22]*ITT Rayonier, Inc. v. Puget Sound Freight Lines*, 44 Wn. App. 368, 374, 722 P.2d 1310 (1986).

[23]V. Schwartz, *Comparative Negligence* § 9.2, at 157-58 (2d ed. 1986); W. Keeton, D. Dobbs, R. Keeton & D. Owen § 68, at 482-84.

[24]*Shorter v. Drury*, 103 Wn.2d 645, 656, 695 P.2d 116, *cert. denied*, 474 U.S. 827 (1985); *Leyendecker v. Cousins*, 53 Wn. App. 769, 773, 770 P.2d 675, *review*

assumption only bars a claim with regard to the risks actually assumed by the plaintiff.[25]

▮ Implied *primary* assumption of risk arises where a plaintiff has impliedly consented (often in advance of any negligence by defendant) to relieve defendant of a duty to plaintiff regarding specific *known* and appreciated risks.[26] It is important to carefully define the *scope* of the assumption, *i.e.*, what risks were impliedly assumed and which remain as a potential basis for liability. It is this type of assumption of risk which was the basis for the grant of summary judgment in favor of the ski resort operator.

As discussed in the next issue, the last two types of assumption of risk (which involve the plaintiff's voluntary choice to encounter a risk created by the defendant's negligence) retain no independent significance from contributory negligence after the adoption of comparative negligence.

Washington case law is somewhat confusing on the issue whether subsequent to the adoption of comparative negligence "primary implied assumption of risk" acts as a complete bar to recovery or only acts as a damage-reducing factor.

▮▮ A number of Washington cases are in agreement with Dean Prosser, that primary implied assumption of the risk remains a complete bar to recovery.[27] This is because primary assumption occurs when the plaintiff has impliedly consented to assume a duty. If the defendant does not have the duty, there can be no breach and hence no negligence.[28]

---

*denied*, 113 Wn.2d 1018 (1989); W. Keeton, D. Dobbs, R. Keeton & D. Owen § 68, at 496; *ITT Rayonier*, 44 Wn. App. at 376 n.5.

[25]*See Shorter*, 103 Wn.2d at 655-58.

[26]*Kirk v. WSU*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987) (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* 496 (5th ed. 1984)).

[27]*Ridge v. Kladnick*, 42 Wn. App. 785, 788, 713 P.2d 1131, *review denied*, 106 Wn.2d 1011 (1986); *ITT Rayonier*, 44 Wn. App. at 376 n.5; *Codd v. Stevens Pass, Inc.*, 45 Wn. App. 393, 402, 725 P.2d 1008 (1986), *review denied*, 107 Wn.2d 1020 (1987); *Leyendecker*, 53 Wn. App. at 774.

[28]W. Keeton, D. Dobbs, R. Keeton & D. Owen § 68, at 496-97.

A classic example of primary assumption of risk occurs in sports cases. One who participates in sports "assumes the risks" which are *inherent in the sport*. To the extent a plaintiff is injured as a result of a risk inherent in the sport, the defendant has no duty and there is no negligence. Therefore, that type of assumption acts as a complete bar to recovery.[29] The doctrine of primary implied assumption of the risk can perhaps more accurately be described as a way to define a defendant's duty.[30] A defendant simply does not have a duty to protect a sports participant from dangers which are an inherent and normal part of a sport.

In *Kirk v. WSU*, 109 Wn.2d 448, 746 P.2d 285 (1987), a college cheerleader sued her university to recover for injuries sustained while she was practicing cheerleading allegedly under dangerous conditions and without adequate supervision. The university argued her claim was barred because she had assumed the risks inherent in the sport. This court explained that the basis of both express and implied primary assumption of risk was the plaintiff's *consent* to the *negation of defendant's duty with regard to those risks assumed*. Since implied primary assumption of the risk *negates duty*, it acts as a bar to recovery when the injury results from one of the risks assumed. As Dean Prosser explains, *primary* implied assumption of risk should continue to be an absolute bar after the adoption of comparative fault because in this form it is a principle of "no duty" and hence no negligence, thus negating the existence of any underlying cause of action.[31]

Although the plaintiff in *Kirk* did assume the risks inherent in the sport of cheerleading, she did *not* assume the risks caused by the university's negligent provision of dangerous facilities or improper instruction or supervision. Those were

---

[29]*See, e.g., Ridge v. Kladnick, supra; ITT Rayonier, Inc. v. Puget Sound Freight Lines, supra; Codd v. Stevens Pass, Inc., supra; Leyendecker v. Cousins, supra.*

[30]4 F. Harper, F. James & O. Gray, *Torts* § 21.0, at 188-89 (2d ed. 1986) ("In its primary sense the plaintiff's assumption of a risk is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk.").

[31]W. Keeton, D. Dobbs, R. Keeton & D. Owen § 68, at 496.

not risks "inherent" in the sport. Hence, in a *primary* sense, she did not "assume the risk" and relieve defendants of *those* duties. However, to the extent she continued to practice (on a dangerous surface, without instruction), she may have "unreasonably assumed the risk" *i.e.*, have been contributorially negligent. This unreasonable assumption of the risk is assumption in the secondary sense which does not bar all recovery.

In *Leyendecker v. Cousins*, 53 Wn. App. 769, 773-74, 770 P.2d 675, *review denied*, 113 Wn.2d 1018 (1989), the Court of Appeals correctly explained

> that those who choose to participate in sports or amusements consent to being injured by the risks inherent in the activity, and that such conduct constitutes "primary" assumption of risk, which continues as a complete bar to recovery even after the adoption of comparative negligence. . . .
>
> . . .
>
> In contrast, implied reasonable and unreasonable assumption of risk arise where the plaintiff is aware of a risk that already has been created by the negligence of the defendant, yet chooses voluntarily to encounter it. In such a case, plaintiff's conduct is not truly consensual, but is a form of contributory negligence, in which the negligence consists of making the wrong choice and voluntarily encountering a known unreasonable risk.

(Citations omitted.)

We now apply these principles of law to the present case.

ISSUE FOUR.

CONCLUSION. Under the facts presented, the trial court should not have applied the doctrine of primary implied assumption of risk as a complete bar to plaintiff's recovery against the ski resort operator.

To reiterate, the two defendants obtained summary judgment in their favor based upon two different legal theories. As to the ski school, its dismissal was based upon the *express* release language in the application. However, with regard to the ski resort operator, there was no release (express assumption of the risk) and hence the question becomes what risks Justin *impliedly* assumed by choosing to engage in the sport of skiing.

To determine whether summary judgment was properly granted to the ski resort operator, it is essential to define what duties the ski resort owed to Justin and what risks were assumed by Justin.

■ A skier is a business invitee of the ski area operator.[32] The operator owes a duty to a skier to discover dangerous conditions through reasonable inspection, and repair that condition or warn the invitees, unless it is known or obvious.[33] Washington statutory law, RCW 70.117, modifies but is generally consistent with the common law.[34] This state's ski statute imposes certain duties on skiers and on ski operators but does not purport to relieve ski operators from all liability for their own negligence.[35]

The resort argues that it owed no duty to Justin because the shed was an obvious hazard. This issue cannot be decided on summary judgment as this factual inquiry is disputed. Justin has no recollection of the accident but there was evidence in a declaration from a witness that the proximity of the racecourse to the shed could not be determined at the start of the course, the transition from the packed snow of the racecourse to the wet, heavy, unpacked snow immediately adjacent to the course was not obvious and that one could not see or recognize the danger of the depression under the shack or the hazard it presented. An expert's declaration stated that from the top of the course Justin could not have appreciated the danger posed by the proximity of the course to the shed.

As in many sports settings, a skier does impliedly assume certain risks by engaging in the sport.[36] Implied *primary*

---

[32]*Codd*, 45 Wn. App. at 396-97; *Egede-Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 132, 606 P.2d 1214 (1980).

[33]*Codd*, 45 Wn. App. at 397; *Egede-Nissen*, 93 Wn.2d at 132.

[34]*Codd*, 45 Wn. App. at 397.

[35]RCW 70.117.040; RCW 70.117.020(4).

[36]*See, e.g., Codd*, 45 Wn. App. at 401; *Wagenblast v. Odessa Sch. Dist. 105-157-166J*, 110 Wn.2d 845, 857, 758 P.2d 968, 85 A.L.R.4th 331 (1988); *Kirk*, 109 Wn.2d at 456.

assumption of the risk means the plaintiff assumes the dangers that are *inherent in* and *necessary to* the particular sport or activity.

Since Justin assumed the risks inherent in the sport of skiing, the issue is whether all the risks which caused his injuries were inherent in the sport.

There are ski cases in other jurisdictions which reach differing results as to whether a skier assumes the risk of collision with a fixed object in the ski trail.[37] However, the evidence in the instant case was not just that Justin collided with an obvious stationary object because of difficult snow conditions. An accident resulting from such conditions would ordinarily be due to risks "inherent" in the sport of skiing. However, in this case, some of the evidence would support a conclusion that the racecourse was laid out in an unnecessarily dangerous manner that was not obvious to a young novice ski-racing student. While participants in sports are generally held to have impliedly assumed the risks inherent in the sport, such assumption of risk does not preclude a recovery for negligent acts which unduly enhance such risks.[38] Review of analogous cases is helpful in this situation.

In *Marietta v. Cliffs Ridge, Inc.*, 385 Mich. 364, 373, 189 N.W.2d 208 (1971), the court held that it was a question of fact to be left to the jury whether a ski facility was negligent in using 1½-inch sapling poles as slalom gate markers rather than bamboo or fiber glass poles.

In *Ashcroft v. Calder Race Course, Inc.*, 492 So. 2d 1309 (Fla. 1986), a jockey was injured when thrown from his horse which had veered across a racecourse out of control toward an exit gap, the negligent placement of which was

---

[37]*Compare, e.g., Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (3d Cir. 1983) *and Leopold v. Okemo Mt., Inc.*, 420 F. Supp. 781 (D. Vt. 1976) *with Rosen v. LTV Recreational Dev., Inc.*, 569 F.2d 1117 (10th Cir. 1978) *and Sunday v. Stratton Corp.*, 136 Vt. 293, 390 A.2d 398 (1978).

[38]*Wood v. Postelthwaite*, 6 Wn. App. 885, 896, 496 P.2d 988 (1972), *aff'd*, 82 Wn.2d 387, 510 P.2d 1109 (1973); *Kirk v. WSU*, 109 Wn.2d 448, 456, 746 P.2d 285 (1987); *Ridge v. Kladnick*, 42 Wn. App. 785, 788, 713 P.2d 1131, *review denied*, 106 Wn.2d 1011 (1986).

found to be the cause of the accident. The court said the jockey's assumption of risk waived only risks inherent in the sport itself. Riding on a racetrack with a negligently placed exit gap was not an inherent risk in the sport and it was error for the judge to instruct the jury on assumption of risk.

In *Jessup v. Mt. Bachelor, Inc.*, 101 Or. App. 670, 792 P.2d 1232, *review denied*, 310 Or. 475 (1990), the Oregon court recently explained that a skier is barred from recovery from a ski area operator for injury caused solely by the inherent risks of skiing, but if the injury was caused by a combination of the inherent risks of skiing and operator negligence, the doctrine of comparative fault applies.

 These cases illustrate the proposition that primary assumption of the risk in a sports setting does not include the failure of the operator to provide reasonably safe facilities.[39] Here, there is evidence that could support a finding that the racecourse for beginning racers was placed dangerously close to an unfenced, unpadded, abandoned shed. We therefore conclude that summary judgment was improperly granted.

 Summary judgment is appropriate only if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c). In such cases facts and all reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party, and summary judgment should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.[40] The burden is on the

---

[39]F. Harper, F. James & O. Gray, *Torts* § 21.0, at 435 (2d ed. Cum. Supp. No. 2, 1991); *Kirk v. WSU, supra. See also Hiibschman v. Valdez*, 821 P.2d 1354 (Alaska 1991).

[40]*Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990); *Glesener v. Balholm*, 50 Wn. App. 1, 7, 747 P.2d 475 (1987).

moving party to demonstrate that there is no issue as to a material fact, and the moving party is held to a strict standard.[41] Since the plaintiff's evidence raised genuine issues of material fact with regard to whether the defendants acted negligently and whether such negligence, if any, was a proximate cause of the injuries, these issues are not properly decided on summary judgment.

In sum, Justin did assume the risks inherent in the sport (primary assumption of risk) but he did not assume the alleged negligence of the operator. He may nonetheless have been contributorially negligent (*i.e.*, in the secondary sense he may have assumed some risk). However, the doctrine of unreasonable assumption of the risk has been subsumed in comparative negligence law.[42] Any such contributory negligence would reduce, rather than bar, Justin's recovery; this issue remains to be resolved at trial. The issue of contributory negligence for minors from 6 to 16 years of age is generally a question for the trier of fact.[43] Washington recognizes a special standard of care applicable to children; a child's conduct is measured by the conduct of a reasonably careful child of the same age, intelligence, maturity, training and experience.[44]

Accordingly, we reverse the summary judgment in favor of the ski resort operator and remand to the trial court for further proceedings consistent with this opinion. As to the summary judgment in favor of the ski school, we affirm the

---

[41]*Atherton Condominium Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

[42]*Kirk*, 109 Wn.2d at 454; *Ridge*, 42 Wn. App. at 787; *Leyendecker v. Cousins*, 53 Wn. App. 769, 774 n.2, 770 P.2d 675, *review denied*, 113 Wn.2d 1018 (1989); RCW 4.22.015 (unreasonable assumption of risk is included in the concept of fault).

[43]*Hansen v. Friend*, 118 Wn.2d 476, 484, 824 P.2d 483 (1992); *Bauman v. Crawford*, 104 Wn.2d 241, 244, 704 P.2d 1181 (1985).

[44]*Bauman*, 104 Wn.2d at 244.

dismissal of the parents' cause of action, but reverse and remand with regard to Justin's own cause of action.

DORE, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.