# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PIKE & VIRGINIA NO. 8, LLC, a Washington limited liability company; and PIKE AND VIRGINIA NO. 12-13, LLC, a Washington limited liability company, | No. 83421-5-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| PIKE & VIRGINIA CONDOMINIUM ASSOCIATION, a Washington nonprofit corporation, | |
| Respondent. | |
| PIKE & VIRGINIA CONDOMINIUM ASSOCIATION, a Washington nonprofit corporation, | |
| Third Party Plaintiff, | |
| v. | |
| MICHAEL CORLISS, an individual, | |
| Third Party Defendant. | |

BIRK, J. — Two limited liability companies (Owners) owning units in a condominium appeal the summary judgment dismissal of their claims that the condominium association (Association) neglected to maintain a common element, resulting in damage to the Owners' units. Because the condominium declaration exculpates the Association from the Owners' claims, we affirm.

I

When reviewing a summary judgment order, we consider the facts and all reasonable inferences in the light most favorable to the nonmoving party, here, the Owners. Hollis v. Garwall, Inc., 137 Wn.2d 683, 690, 974 P.2d 836 (1999).

The Pike & Virginia condominium was built in 1978. The building is an eight story reinforced concrete structure. Michael Corliss testified by declaration he purchased "Unit 12-13" in 2007 and transferred it to one of the plaintiff limited liability companies in this action, Pike & Virginia No. 12-13 LLC. He purchased "Unit 8" in the same building and transferred it to a different limited liability company, also a plaintiff in this action, but the plaintiffs do not raise any issues concerning Unit 8 on appeal. A portion of the interior of Unit 12-13 is below the deck of "Unit 14." Corliss testified, "Within a few years of our purchase of the units, we began seeing water intrusion, most notably in Unit 12-13 from the concrete waffle ceiling of the unit's loft bedroom directly below Unit 14's window wall system." This resulted in damage to carpet, bedding, and interior furnishings, and prevented the Owners from using or renting the unit. Corliss testified, "We are specifically seeking damages associated with that loss of use and lost rental value." This testimony accorded with plaintiffs' complaint, which alleged plaintiffs had suffered damages and prayed for affirmative relief consisting of damages, attorney fees, costs, and interest.

In 2016, the Association hired Paul Lukes to perform a building envelope inspection. Lukes stated the Unit 14 deck was leaking into Unit 12-13 "via shrinkage cracks in the concrete deck." Lukes could not discount that "some

2

leakage could be entering via the window system of Unit 14," but he saw no evidence of that. His findings implied "significant water volumes" were "somehow" entering "via the curb assumed to exist under the window system of Unit 14," but he did not offer a "firm theory" of a likely entry path. Lukes recommended complete re-waterproofing of the Unit 14 deck, to include removal and re-installation of the window system. Lukes stated, "[I]f one wished to accept the risk of incomplete performance, one could re-waterproof the deck only, and extend the membrane only a couple of inches up the window curbs, planter walls, and the raised concrete elements." In 2017, the Association elected to complete repairs that did not include removal and re-installation of the window system. The leaks resumed within a year.

In January 2019, the Association authorized another building envelope inspection, conducted by OAC Services Inc., to determine the source of the leaks. A March 2019 OAC report stated, "[W]e suspect that the waterproofing beneath the sill of the window wall system is not functioning. We recommend removing the window wall and waterproofing the curb and sub sill." OAC went on, "OAC understands that the removal and replacement of the window [wall] may not be [an] acceptable repair option at this [sic]. In lieu of this OAC recommends repairs to the doors and window sills."

The Owners filed this action in May 2019. The Owners alleged, "The Board [of Directors of the Association (Board)] and the Association breached [their] obligation to repair and maintain the common elements in a satisfactory manner,

3

as evidenced by the ongoing and persistent water intrusion in the two units owned by Plaintiffs."

The record includes a report dated August 20, 2020, by Soltner Group Architects, identified by the Association as an expert report obtained by the Owners. According to this report, water had been leaking from Unit 14 into Unit 12-13 for several years. The report states, "Water enters at the window wall due to the curb to sill open joint and lack of sheet metal transition flashings and drainage pans." The report recommends, "The entire window wall assembly at Unit 14 and both levels of Unit 12/13 shall be removed and replaced," among additional recommendations.

Trial was set to begin February 22, 2021. On February 2, 2021, the Owners sought leave to amend their prayer to seek, in addition, "[i]njunctive relief in the form of requiring the [Association] to adopt and implement [the Owners'] requested scope of repair." The superior court denied the motion, stating,

> [T]he [Owners'] complaint does not in any way give notice of a claim for injunctive relief. There is absolutely no proof that [the Owners] ever indicated to [the Association] that they contemplated such a claim. (Even now, the court has no idea what the scope and nature of the injunctive relief would be.) There is no way that [the Association] can be prepared for this last-minute claim in time for trial, and the court has warned the parties that this case, which has already received two trial continuances, would not again be continued. The prejudice to [the Association] from the proposed last-minute amendment is therefore obvious and overwhelming.

Trial was continued when a judge was not available on the assigned trial date and the case was placed on the standby calendar. Wash. Court of Appeals oral argument, Pike & Virginia No. 12-13, LLC v Pike & Virginia Condo. Ass'n, No.

4

83421-6-I (Apr. 20, 2023), at 9 min., 20 sec. through 10 min., 40 sec., https://tvw.org/video/division-1-court-of-appeals-2023041263/.

On April 1, 2021, the Association sought summary judgment. The Association argued, relevant to this appeal, article 16.1 of the condominium declaration exculpates the Association from liability for water damage unless covered by insurance. Article 8.3 of the declaration vests the Association and Board with exclusive authority and responsibility to maintain common areas. Article 16, titled "Limitation of Liability," reads in relevant part in paragraph 16.1:

> Except to the extent covered by insurance obtained by the Board pursuant to Article 11, neither the Association nor the Board (or the Declarant or Declarants' managing agent exercising the powers of the Board) shall be liable for: any failure of any utility or other service to be obtained and paid for by the Board; *or for injury or damage to person or property caused by the elements, or resulting from electricity, water, rain, dust or sand which may lead or flow from outside or from any parts of the buildings, or from any of its pipes, drains, conduits, appliances, or equipment, or from any other place*; or for inconvenience or discomfort resulting from any action taken to comply with any law, ordinance or orders of a governmental authority. No diminution or abatement of common expense assessments shall be claimed or allowed for any such utility or service failure, or for such injury or damage, or for such inconvenience or discomfort.

(Emphasis added.)

Article 11.1.2 requires the Association to obtain "General comprehensive liability insurance" covering, among other things, "water damage."

With its motion, the Association submitted a letter to the Association from Sibel Nelson on behalf of Allstate Insurance Company. The letter was "to update you on Allstate's position on coverage" and "request that you ask for a special verdict at trial." Allstate wrote it continued to reserve the right to deny coverage

5

for the Owners' claims "because the claims/damages sought are not covered under the Allstate policies issued to [the Association]."  Despite Allstate's belief "there likely is no coverage for almost all of the claims asserted," the letter stated, "The one possible exception is the claim for damage to some of the interiors (carpet, bedding, furniture) of Unit 12/13, assuming such damage occurred during the relevant policy period and is actually being claimed as damages in the case."

In response to the summary judgment motion, the Owners submitted the Association's governing documents, the declaration by Corliss, the 2016 building envelope inspection by Lukes, and the 2019 building envelope inspection reports by OAC.

The superior court granted summary judgment.  The Owners timely appeal the superior court's orders denying leave to amend and granting summary judgment.

II

We review a trial court's denial of leave to amend for "manifest abuse of discretion."  Herron v. Tribune Publ'g Co., 108 Wn.2d 162, 165, 736 P.2d 249 (1987).  The touchstone for denial of an amendment is the prejudice such an amendment would cause the nonmoving party.  Caruso v. Loc. Union No. 690 of Int'l Bhd. of Teamsters, 100 Wn.2d 343, 350, 670 P.2d 240 (1983).  "Undue delay on the part of the movant in proposing the amendment constitutes grounds to deny a motion to amend only where such delay works undue hardship or prejudice upon the opposing party."  Oliver v. Flow Int'l Corp., 137 Wn. App. 655, 664, 155 P.3d 140 (2006).  In assessing prejudice, the court may consider potential delay and

unfair surprise. Karlberg v. Otten, 167 Wn. App. 522, 529, 280 P.3d 1123 (2012). The court may also consider the need for new discovery. See Oliver, 137 Wn. App. at 664.

The scheduled trial date was less than three weeks away when the Owners filed their motion. As the superior court indicated, the Owners had not previously given notice they intended to seek injunctive relief. If the Association had known before the close of discovery and before the dispositive motion cutoff the Owners planned to seek this relief, it would have had the opportunity to seek discovery on the anticipated scope of any order for specific performance and to pursue pretrial motion practice as well. And, as the superior court indicated, the request for injunctive relief as proposed was too vague, at least that late in the case, in asking the court to order "[the Owners] requested scope of repair." The superior court did not abuse its discretion in denying leave to amend.

III

This court reviews orders granting or denying summary judgment de novo. McDevitt v. Harbor View Med. Ctr., 179 Wn.2d 59, 64, 316 P.3d 469 (2013). The moving party bears the burden of showing there is no issue of material fact and that they are entitled to judgment as a matter of law. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this initial showing, then the inquiry shifts to the party with the burden of proof at trial, to " 'make a showing sufficient to establish' " the essential elements of that party's claims. Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1985)).

7

To analyze the exculpatory clause in the condominium declaration, both parties call the court's attention to decisions analyzing exculpatory clauses required of patrons of ski areas. Quoting Scott, the Owners assert, " 'Exculpatory clauses are strictly construed and must be clear if the exemption from liability is to be enforced. The sufficiency of the language to effect a release is generally a question of law.' " Scott v. Pac. W. Mountain Resort, 119 Wn.2d 484, 490, 834 P.2d 6 (1992) (footnote omitted). The Owners argue Article 16.1 should be strictly construed, and this "requires a finding that the Declaration's limitation on liability does not extend to water intrusion damage resulting from the Association's failure to maintain the Building." The Owners argue, in other words, the Association's liability for breach of its duty to maintain the common element is distinct from the scope of the Article 16.1 exculpation from being liable for damage to property resulting from water "which may lead or flow from outside or from any parts of the buildings."

Scott goes on to say, "Some cases and commentators have declared that a clause will not be construed to include an exemption for negligence unless it includes the word 'negligence' or language with similar import. However, many courts have held that clear and unambiguous exculpatory language can eliminate negligence liability without expressly using the word 'negligence.' " Id. (footnote omitted). "Courts should use common sense in interpreting purported releases, and the language 'hold harmless . . . from all claims' logically includes negligent conduct. One does not have a 'claim' to be 'held harmless' from unless there is a

8

basis for liability. The language of the exculpatory clause shows the parties' intent to shift the risk of loss." Id. at 491 (alteration in original) (footnote omitted).

The Association cites Chauvlier v. Booth Creek Ski Holdings, Inc., 109 Wn. App. 334, 35 P.3d 383 (2001). There, though the plaintiff argued the existence of a statute, chapter 79A.45 RCW, delineating responsibilities of both skiers and ski resort operators meant the waiver he signed was unenforceable, the court noted "since the Washington State Legislature has chosen to regulate recreational skiing by statute, it is for the Legislature, and not the courts, to declare that liability releases in the recreational skiing context violate public policy." Id. at 344 n.28. The Association argues the present case is analogous because condominium associations are regulated by statute, in this case chapter 64.32 RCW, but the legislature has not declared limitations on liability in the condominium context violate public policy.

We hold the Owners' claims for damages for water damage to property fall into the scope of Article 16.1 exculpating the Association from being liable for damage to property resulting from "water . . . which may lead or flow from outside or from any parts of the buildings." As in Scott, the exculpation from liability for damage to property from water from outside or from any parts of the buildings logically includes liability based on the Association's negligence. That the exception to the exculpation exists when the Association has insurance to cover the liability implies the clause was intended to exculpate the Association from liability for damages for its own negligence. And as in Chauvlier, the Owners do

not point to legislative restriction on the effectiveness of the exculpation. Under the authorities cited, the Owners' claims were within the scope of the exculpation.

The Owners argue the Allstate letter was evidence that created a question of fact on the existence of insurance coverage, bringing their claims within the exception of paragraph 16.1. Asserting it was the Association's burden to establish there was not coverage, the Owners argue the Allstate letter was insufficient because language in the letter adverting to the possibility of there being some coverage for some claims supports the inference there was such coverage. We disagree. The Allstate letter was some evidence that, after reviewing the coverages, Allstate's adjuster believed "the claims/damages sought are not covered under the Allstate policies issued to [the Association]." In response, the Owners offered no evidence supporting a contrary conclusion. To the extent the Owners rely on statements in the Allstate letter suggesting the possibility of some coverage, those statements are speculative and insufficient to support a fact question precluding summary judgment. Miller v. Likins, 109 Wn. App. 140, 145, 34 P.3d 835 (2001).

Because the Owners' claims are within the scope of the exculpation of liability, and because the Owners do not establish a fact question about insurance coverage to bring their claims within the exception, summary judgment was appropriate.

IV

The Association seeks "attorney fees and costs," but points only to RAP 14.2. The Association does not provide any basis for reasonable attorney fees in

compliance with RAP 18.1(b), and any such claim is denied. The Association is awarded statutory costs as prevailing party under RAP 14.2.

Affirmed.

_Birk, J._

WE CONCUR:

_Díaz, J._ _Coburn, J._